**IN RE : Rosalva LUA, Debtor.**

**Case No.: 2:11–bk–41173–DS**

United States Bankruptcy Court, C.D. California, **Los Angeles Division.**

Signed May 1, 2015

Bruce R. Fink, Law Offices of Bruce R. Fink, Santa Ana, CA, for Debtor.

## MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO DEBTOR'S AMENDED HOMESTEAD EXEMPTION

Deborah J. Saltzman, United States Bankruptcy Judge

Elissa Miller, chapter 7 trustee, objects to the amended homestead exemption claimed by the debtor Rosalva Lua. Having considered the papers, the evidentiary record, and arguments of counsel, the court sustains the trustee's objection based upon the following findings of fact and conclusions of law made pursuant to Federal Rule of Civil Procedure 52(a), as incorporated into Federal Rule of Bankruptcy Procedure 7052 and applied to contested matters by Federal Rule of Bankruptcy Procedure 9014(c).[1]

## I. BACKGROUND

The parties agree that the facts in this case are not in dispute. Rosalva Lua (the "Debtor") filed a voluntary chapter 7 petition on July 21, 2011. Elissa Miller (the "Trustee") is the duly appointed chapter 7 trustee. The Debtor's original schedules reflected that the Debtor was married to her non-filing spouse, Rigoberto Lua (the "Husband"), and that they resided at the real property located at 2044 Pennywood Pl., Pomona, CA 91767 (the "Property"). Schedule A listed a 30% interest in the Property, describing the Property as the Husband's property prior to marriage. (Docket No. 1, Schedule A). On her original Schedule C, the Debtor claimed a $75,000 exemption in the Property under California Civil Procedure Code section 704.730(a)(1). (Docket No. 1, Schedule C).

The first section 341(a) meeting of creditors was scheduled for August 30, 2011. The Debtor did not appear, and the meeting was continued to September 30, 2011. At the continued 341(a) meeting, the Debtor appeared and testified that she did not have a prenuptial agreement with her Husband and that earnings were used to

---

1. Unless otherwise indicated, all "Code," "chapter," and "section" references are to the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P."), which make applicable certain Federal Rules of Civil Procedure ("Fed. R. Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

pay all of the mortgage payments on the Property. Based on this information and other testimony, the Trustee concluded that the Debtor had undisclosed assets, including a tax refund. (Trustee's Objection to Debtor's Amended Homestead Exemption ("Objection"), Docket No. 58, at 2:20–25). The Trustee continued the 341(a) meeting to October 26, 2011, to allow the Debtor to amend her schedules to properly disclose the tax refund received, turn the refund over to the estate, and provide additional information regarding her bank accounts and worker's compensation funds. (Objection, Docket No. 58, at 3:1–4).

On October 13, 2011, the Debtor filed amended schedules (the "First Amended Schedules") indicating that the Debtor had no interest in the Property other than "such community interest as may exist for the purposes of a divorce action." (Docket No. 17, Amended Schedule A). Amended Schedule A also stated that the Property was "owned by Husband along with two of his family members." (Docket No. 17, Amended Schedule A). The Debtor removed her claim of exemption in the Property from her amended Schedule C and instead asserted exemptions in additional personal property assets, including a $12,500 receivable from the Husband's employer, pursuant to the "wild card" exemption provision of California Civil Procedure Code section 702.140. (Docket No. 17, Amended Schedule C).[2]

The Trustee's investigation of the Property revealed that the chain of title was as follows:

1. Before his marriage to the Debtor, the Husband acquired the Property on August 18, 1989, with Francisco Granados and Jose L. Granados.

2. On December 7, 1992, the two other owners transferred their interests in the Property by gift deed to the Husband as a single man (contradicting the assertion in the Debtor's amended Schedule A that the Property was "owned by Husband along with two of his family members").

3. On April 19, 1999, the Husband and the Debtor executed a gift deed purportedly transferring the Debtor's interest in the Property to the Husband as his sole and separate property.

(Objection, Declaration of Elissa Miller ("Trustee Decl."), Docket No. 58, at 11, ¶ 10(a)–(c)).

After the Trustee investigated the Property and after the Debtor deleted her homestead exemption, the Trustee concluded that the Debtor's interest in the Property could be monetized, through either a sale or an agreement with the Debtor and the Husband, to pay in full the unsecured claims against the estate, which totaled approximately $10,000. (Trustee Decl., Docket No. 58, at 11, ¶ 11). On March 30, 2012, the court entered an order granting the Trustee's application to employ counsel to assist with these efforts. (Docket No. 28).

The Trustee was unable to negotiate a settlement with the Debtor and the Husband, and on June 6, 2012, the Trustee filed an adversary proceeding (Case No. 2:12–ap–01769) against the Husband to es-

2. The Debtor's First Amended Schedule B, item 17, describes $22,500 in net proceeds from the Husband's worker's compensation claim, divided as follows: $12,500 listed as an account receivable in item 16, as a loan to the Husband's employer; $1,000 used to pay for the Debtor's original counsel; and a $9,000 balance, spent between the petition date and the date of the First Amended Schedules. (Docket No. 17, Schedule B). The Debtor exempted the $12,500 receivable and the $9,000 already spent under the "wild card" exemption on her First Amended Schedule C. (Docket No. 17, Schedule C).

tablish the estate's interest in the Property. On July 24, 2012, default was entered against the Husband. (Adv. Docket No. 8). On September 25, 2012, the court entered a default judgment against the Husband, finding that the Debtor had a community property interest of undetermined amount in the Property, and ordering the Husband to provide an accounting pursuant to section 524(a). (Adv. Docket No. 16). The Husband did not comply with the judgment. (Trustee Decl., Docket No. 58, at 12, ¶ 15). Without an accounting to determine the extent of the estate's interest in the Property, on December 18, 2013, the Trustee filed a motion for modification of default judgment to declare the entire Property community property and order turnover of the Property to the Trustee. (Adv. Docket No. 19). The motion was unopposed. On June 2, 2014, the court entered an order in the adversary proceeding modifying the default judgment, finding that the community owns 100% of the Property, and ordering turnover of the Property to the Trustee. (Adv. Docket No. 28).

More than two years after the case was filed, the Trustee retained and filed an application to employ Coldwell Banker (the "Broker") to market and sell the Property. (Docket No. 41). Service of the application to employ the Broker was proper on the Debtor and Debtor's counsel. The Debtor did not file an opposition. On May 27, 2014, the court entered an order authorizing employment of the Broker. (Docket No. 50).

As the Trustee was retaining the Broker, the Husband contacted the Trustee and the parties began negotiating. (Trustee Decl., Docket No. 58, at 12, ¶ 17). On April 22, 2014, the Trustee filed a motion to approve compromise with the Husband in the main case (the "Settlement Motion," Docket No. 39). In the agreement between the Trustee and the Husband (the "Settlement"), the Husband stipulated to a sale of the Property, with proceeds to pay the costs of sale, property taxes, and liens. The remaining proceeds would be divided equally between the Husband and the estate. Service of the Settlement Motion was proper on the Debtor and Debtor's counsel. The Debtor did not file an opposition. The court entered an order granting the Settlement Motion on May 13, 2014. (Docket No. 48).

Thereafter, the Trustee instructed the Broker to move forward with the sale of the Property. (Objection, Docket No. 58, at 5:9–10; see also Declaration of Thomas Bluemel ("Broker Decl."), Docket No. 58, at 15, ¶ 4). The Debtor, who continued to occupy the Property, refused to cooperate with the marketing efforts and interfered with the actions of the Broker. The Broker contacted the Debtor to give notice of appointments to show the Property 24 hours in advance. (Broker Decl., Docket No. 58, at 15, ¶ 10). After answering an initial call from the Broker, the Debtor never answered additional calls from the Broker's office and thwarted appointments to show the Property on at least nine occasions by denying access to the Property. (Broker Decl., Docket No. 58, at 15, ¶ 12–14).

On June 6, 2014, the Trustee filed a motion to compel the Debtor to turn over the Property. (The "Turnover Motion," Docket No. 52). Service of the Turnover Motion was proper on the Debtor and Debtor's counsel. The Debtor did not file an opposition. The court granted the Turnover Motion on July 7, 2014. (Docket No. 54). Around this time, the Debtor vacated the Property without notice to the Trustee or the Broker and left the front door dangling from the hinges. (Broker Decl., Docket No. 58, at 17, ¶ 18). To secure the Property, the Broker advanced

the costs of repairing the door. (Broker Decl., Docket No. 58, at 17, ¶ 19).[3]

On July 21, 2014—three years after the case was filed, 33 months after the First Amended Schedules were filed, after the Trustee's investigation of the Property, after litigation to establish the estate's interest in and obtain orders for turnover of the Property, after retention of counsel and the Broker to sell the Property, and after the settlement with the Husband to sell the Property to pay all unsecured creditors in full[4]—the Debtor again amended her Schedules A and C (the "Second Amended Schedules," Docket No. 56). Schedule A was amended to state that the Debtor had a community property interest in the Property. Schedule C was amended to claim a $100,000 exemption in the Property under California Civil Procedure Code section 704.730.

The Debtor's behavior has ensured that no funds will be available for unsecured creditors. In filing the First Amended Schedules, the Debtor deleted her homestead exemption and used the "wild card" exemption to protect personal property assets, including $9,000 in cash and a $12,500 receivable. (Docket No. 56, Schedule C). In reliance on the First Amended Schedules, the Trustee did not pursue the protected cash and receivable, and instead pursued the sale of the Property and settlement with the Husband to generate proceeds for distribution to creditors. Now that the Debtor has again amended her schedules to include the homestead exemption, the Debtor's creditors stand to recover nothing from the sale of the Property after the costs of the sale, payment of taxes, and payment to the Husband. (Trustee Decl., Docket No. 58, at 13, ¶ 20).

On August 20, 2014, the Trustee filed the Objection, asserting bad faith, estoppel, and laches as grounds to disallow the amended homestead exemption. (Docket No. 58).

## II. DISCUSSION

### A. The Court Disregards the Debtor's Late Opposition and All Supplemental Briefing That Does Not Relate to *Law v. Siegel*

Any opposition or response to a motion must be filed not later than 14 days before the hearing date. LBR 9013–1(f). Failure to file a timely response may be deemed consent to the court granting the motion. LBR 9013–1(h); *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir.1995) (affirming the trial court's granting of a motion to dismiss; trial court may rely on local rule providing that the failure to file a memorandum of points and authorities in opposition is deemed consent to the granting of the motion); *see also Sanders v. United States Trustee (In re Sanders)*, No. BAP CC–12–1398, 2013 WL 1490971, at *7 (9th Cir. BAP Apr. 11, 2013) (debtor's failure to file a timely written opposition to the United States Trustee's motion to dismiss "provided an independent procedural basis for dismissal."); *Speir v. Noble (In re Speir)*, No. BAP CC–10–1383, 2011 WL 5838570, at *5 (9th Cir. BAP Sept. 26, 2011) ("[T]he

---

**3.** The Trustee went forward with the sale of the Property and on September 4, 2014, filed a sale motion (The "Sale Motion," Docket No. 61), which was amended on September 8, 2014. (Docket No. 66). The Sale Motion was unopposed, and on October 15, 2014, the court entered an order approving the sale of the Property for $265,000 (the "Sale Order," Docket No. 74). The Sale Order does not state that the Debtor's homestead exemption is to be paid from the proceeds of the sale; the proceeds are being held pending resolution of the Objection and related matters before the court.

**4.** The Debtor did not oppose any of the Trustee's actions in court.

bankruptcy court abused its discretion by accepting the late-filed fee statement into evidence over [the trustee's] objection.").

Here, the hearing on the Objection was originally scheduled and properly noticed for September 16, 2014. The Debtor did not file an opposition to the Objection until September 9, 2014, only seven days before the hearing, in violation of LBR 9013–1(f). Based on the Debtor's failure to file a timely opposition, and in accordance with LBR 90131(h), the court hereby strikes the Debtor's opposition to the Objection and deems the Debtor's failure to file a timely response consent to the relief requested in the Objection.

At the September 16, 2014 hearing—where neither the Debtor nor her counsel appeared—the court issued a tentative ruling and informed the Trustee's counsel that the Objection failed to consider the impact of the Supreme Court's decision in *Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014). The court continued the hearing to permit supplemental briefing regarding the court's authority to disallow an amended exemption after *Law v. Siegel*. On November 11, 2014, the Trustee filed her supplemental brief. (Docket No. 76). On November 18, 2014, the Debtor filed her response to the Trustee's supplemental brief. (Docket No. 77). On November 25, 2014, the Trustee filed her reply to the Debtor's response. (Docket No. 78). Both parties made arguments in their respective supplemental briefs that were outside the scope of the court's instructions. The Debtor, in particular, attempted to assert matters that would have been properly asserted in a timely initial opposition, including arguments regarding equities and the nature of the Property. The court disregards any arguments or information in the supplemental briefs not related to the effect of *Law v. Siegel* on this proceeding.

## B. Disallowing a Homestead Exemption in the Ninth Circuit Prior to *Law v. Siegel*

The Bankruptcy Code authorizes a debtor to exempt certain assets. 11 U.S.C. § 522(b). Exempt assets are not available for payment of either pre-petition claims or administrative expenses. 11 U.S.C. § 522(c), (k).

■ California residents filing for bankruptcy must choose from two sets of exemption options under state law. *See* 11 U.S.C. § 522(b)(1); Cal.Civ.Proc.Code § 703.130; *Flinn v. Morris (In re Steward)*, 227 B.R. 895, 898 (9th Cir. BAP 1998). "One set of exemptions are state law non-bankruptcy exemptions, including a homestead exemption," and the "other set of exemptions is modeled closely upon the federal exemptions listed in § 522(d)." *Id.* A debtor may choose only one set of exemptions. *Id.*; *see* Cal.Civ.Proc.Code § 703.140(a). Under the Bankruptcy Code and California law, exemptions are to be construed liberally in favor of the debtor. *In re Arrol*, 207 B.R. 662, 665 (Bankr. N.D.Cal.1997).

■ Bankruptcy Rule 1009 provides that a "schedule … may be amended by the debtor as a matter of course *at any time* before the case is closed," Fed. R. Bankr.P. 1009(a) (emphasis added), and the Ninth Circuit has applied this right to the claim of exemptions. *See Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir.1998); *see also Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 630 (9th Cir. BAP 2010).

Although exemptions and their amendments are liberally construed, a judicially created limit on this latitude and flexibility arose. Bankruptcy courts throughout the country, including courts in the Ninth Circuit, denied leave to amend or disallowed a

claimed exemption if the trustee or other party in interest timely objected and showed that either: (1) the debtor acted in bad faith; or (2) creditors were prejudiced. *See Michael,* 163 F.3d at 529 (adopting the test set forth in *Doan v. Hudgins (In re Doan),* 672 F.2d 831 (11th Cir.1982)). The Bankruptcy Code does not mention either "bad faith" or "prejudice" as a basis for disallowing an original or amended exemption. *See Arnold v. Gill (In re Arnold),* 252 B.R. 778, 784 (9th Cir. BAP 2000) (acknowledging that disallowing amended exemptions based on bad faith or prejudice represents "judge-made exceptions"). Instead, courts relied on section 105(a) as the source of their equitable power to disallow amended exemptions on those grounds. *Nicholson,* 435 B.R. at 630.[5]

### C. Abrogation of *Law v. Siegel*: Section 105(a) Does Not Provide Authority for Bankruptcy Courts to Disallow Exemptions Based on Bad Faith

This judicially created power was effectively abrogated by the recent United States Supreme Court decision *Law v. Siegel.* In that case, the debtor fabricated a lien against his home in an attempt to keep equity in the home from his creditors. *Law,* 134 S.Ct. at 1194. The debtor also claimed a $75,000 homestead exemption under California Civil Procedure Code section 704.730(a)(1). The chapter 7 trustee successfully challenged the lien and obtained a determination from the bankruptcy court that the debtor had perpetrated a fraud. The court ruled that the trustee could surcharge the debtor's homestead exemption to pay the trustee's attorneys' fees. The debtor appealed, and the Ninth

Circuit Bankruptcy Appellate Panel and the Ninth Circuit both affirmed.

The Supreme Court reversed, holding that the general equitable powers of section 105(a) did not provide authority for judge-made exceptions to explicit mandates of the Bankruptcy Code. Because section 522(k) explicitly prohibits the use of exempt property to satisfy administrative expenses such as attorney fees, the bankruptcy court was not authorized to invoke a judge-made equitable exception to order otherwise. *Law,* 134 S.Ct. at 1194 ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code."). The Supreme Court emphasized that "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code," and that any basis for denial of a state law exemption must arise under state law. *Id.* at 1197–98.

A growing number of cases have held that bankruptcy courts lack the authority to disallow a debtor's claimed homestead exemption based on section 105(a), whether indirectly by denying leave to amend or directly by disallowing the exemption, because doing so would be irreconcilable with *Law v. Siegel. See, e.g., Elliott v. Weil (In re Elliott),* 523 B.R. 188 (9th Cir. BAP 2014); *In re Bogan,* No. 12–16624, 2015 WL 1598056, at *3 (Bankr.W.D.Wis. Apr. 7, 2015); *In re Mateer,* 525 B.R. 559, 564 (Bankr.D.Mass.2015); *In re Zarubin,* No. 13–56511–ASW, 2014 WL 7212955, at *2 (Bankr.N.D.Cal. Dec. 17, 2014); *In re Arellano,* 517 B.R. 228, 231 (Bankr.S.D.Cal. 2014); *In re Gress,* 517 B.R. 543, 547–48 (Bankr.M.D.Pa.2014); *In re Scotchel,* No. 12–09, 2014 WL 4327947, at *4 (Bankr.

---

**5.** For a more complete discussion of a debtor's right to claim and amend exemptions under California law and the Bankruptcy Code, and the judicially created limits on this right, see *In re Arellano,* 517 B.R. 228, 231 (Bankr.S.D.Cal.2014).

N.D.W.Va. Aug. 28, 2014); *In re Pipkins*, No. 13–30087DM, 2014 WL 2756552, at \*7 (Bankr.N.D.Cal. June 17, 2014); *In re Gutierrez*, No. 12–60444–B–7, 2014 WL 2712503, at \*6 (Bankr.E.D.Cal. June 12, 2014); *In re Franklin*, 506 B.R. 765, 771 (Bankr.C.D.Ill.2014); *but see In re Woolner*, No. 13–57269–WSD, 2014 WL 7184042, at \*3 (Bankr.E.D.Mich. Dec. 15, 2014) ("[T]o apply *Siegel* to this situation could arguably act as an open invitation for debtors to commit fraud in claiming exemptions, knowing that the Bankruptcy Court would be powerless to deny such.").

■ Here, the Trustee's Objection initially argued that the Debtor should be denied leave to amend her homestead exemption under section 105(a), based on the Debtor's bad faith and the equitable doctrines of estoppel and laches. In response to the court's inquiry regarding the impact of *Law v. Siegel* on this case, the Trustee first argued that *Law v. Siegel* does not extend to this situation. The court disagrees and joins the many courts listed above in finding that *Law v. Siegel* makes clear that this court lacks the authority to deny the Debtor leave to amend her exemptions based on section 105(a).

### D. Direction of *Law v. Siegel*: The Basis for Disallowance of an Exemption Created by State Law Must Be Found in State Law

■ *Law v. Siegel* also makes clear that section 105(a) is not the only basis for denial of a homestead exemption. Where, as here, a debtor claims a state-created exemption, the scope of the exemption—and any basis for denial of the exemption—must be found in state law. "It is of course true that when a debtor claims a state-created exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor

misconduct warrant denial of the exemption." *Law*, 134 S.Ct. at 1196–97.

The Ninth Circuit Bankruptcy Appellate Panel has also held that after *Law v. Siegel*, bankruptcy courts must look to state law and not section 105(a) in determining whether there is a basis to disallow an exemption. *Elliott*, 523 B.R. at 192; *Gray v. Warfield (In re Gray)*, 523 B.R. 170, 175 (9th Cir. BAP 2014). The *Gray* case is particularly instructive here. The debtors did not list as an asset or claim as exempt several months of rent prepaid to their landlord. *Gray*, 523 B.R. at 171. It was not until after the trustee questioned the debtors at the 341(a) meeting that the debtors amended their schedules to add the prepaid rent as an asset and claim an exemption therein. *Id.* The trustee filed an objection to the debtors' amended exemption based on the debtors' failure to previously disclose the asset and claim an exemption. *Id.* at 172. Based on *Law v. Siegel*, the panel reversed the bankruptcy court's decision sustaining the trustee's objection based on the debtors' bad faith. *Id.* at 175. In remanding the case, the panel specifically instructed the bankruptcy court to look to state law "to determine whether under Arizona law equitable considerations may be used to disallow exemptions." *Id.*

As the Supreme Court and the Ninth Circuit Bankruptcy Appellate Panel have instructed, this court will turn to California state law to determine whether the Debtor's amended homestead exemption may be disallowed based on the equitable doctrines asserted by the Trustee. The exemption should be disallowed if, in an action in California state court to seize property claimed as exempt, there would be a basis in California law to disallow the claimed exemption on equitable grounds.

### E. Disallowing the Exemption under California State Law

The Trustee has raised several equitable theories for disallowance of the Debtor's amended homestead exemption under state law, including laches, judicial estoppel, and equitable estoppel. This court finds that under the doctrine of equitable estoppel, the amended homestead exemption should be disallowed.

■ California courts have long recognized that equitable estoppel applies to homestead exemptions. *See, e.g., Jefferson v. Tom,* 52 Cal.App.2d 432, 438, 126 P.2d 387 (Cal.Dist.Ct.App.1942); *see also James v. P.C.S. Ginning Co.,* 276 Cal. App.2d 19, 24, 80 Cal.Rptr. 457 (Cal.Ct. App.1969) (recognizing the application of equitable estoppel to exemptions but declining to apply equitable estoppel to the debtor's homestead under the circumstances); *Viotti v. Giomi,* 230 Cal.App.2d 730, 738, 41 Cal.Rptr. 345 (Cal.Ct.App. 1964) ("No equities or duties had arisen between [the parties]."); *In re Cecala's Estate,* 104 Cal.App.2d 526, 531, 232 P.2d 48 (Cal.Dist.Ct.App.1951) (holding that the administrator of the decedent's will was estopped from claiming a homestead because of her previous election to accept certain benefits under the will).

In *Jefferson v. Tom,* the California District Court of Appeal held that where one party relies on another not asserting a homestead exemption, the court may disallow the exemption on the basis of equitable estoppel. *Jefferson,* 52 Cal.App.2d at 438, 126 P.2d 387.[6] In *Jefferson,* the defendant sent a letter to the plaintiffs regarding her property and made no claim to a homestead. *Id.* The plaintiffs relied on the defendant not asserting a homestead exemption and entered into a series of transactions to construct a new building on the property. *Id.* at 437, 126 P.2d 387. When the defendant later attempted to assert a homestead, the trial court found—and the District Court of Appeal agreed—that she was barred by equitable estoppel. *Id.* at 437–38, 126 P.2d 387. The court noted that equitable estoppel was a longstanding common law doctrine applied to homestead exemptions by courts throughout the country—"[w]here a person having a claim sees another doing an act inconsistent therewith, and stands by in such a manner as to induce the person doing the act, and who might otherwise have abstained from it, to believe that he assents to its doing, he cannot afterwards be heard to complain of it." *Id.* at 437, 126 P.2d 387. This doctrine was codified in California Civil Procedure Code section 1962. *Id.* (*referencing* Cal.Civ.Proc.Code § 1962 (repealed 1965)).

While Section 1962 has been repealed, the concept of estoppel is now codified in California Evidence Code section 623. "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Cal. Evid.Code § 623. Further, the California Civil Procedure Code recognizes the concept of estoppel—"[n]othing in this chapter abrogates or otherwise affects the principles of waiver and estoppel." Cal.Civ.Proc.Code § 583.140.

---

**6.** The *Jefferson v. Tom* case is over 80 years old. The opinion uses racial references and terminology that are unquestionably jarring to readers today. Nevertheless, the legal reasoning remains sound. *Jefferson* has been cited with approval in subsequent cases (*see, e.g., Tarlesson v. Broadway Foreclosure Investments, LLC,* 184 Cal.App.4th 931, 939, 109 Cal.Rptr.3d 319 (Cal.Ct.App.2010); *Van Bogaert v. Avery,* 271 Cal.App.2d 492, 497, 76 Cal.Rptr. 608 (Cal.Ct.App.1969)) and its analysis is particularly instructive in this case.

California courts continue to apply equitable estoppel in a wide range of cases. To invoke equitable estoppel under California law, a party must show: "(a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." *Simmons v. Ghaderi*, 44 Cal.4th 570, 584, 80 Cal.Rptr.3d 83, 187 P.3d 934 (Cal.2008) (*referencing* 13 *Witkin*, Summary of Cal. Law, Equity, § 191, pp. 527–528 (10th ed.2005)); *Mt. Holyoke Homes, LP v. California Coastal Comm'n*, 167 Cal.App.4th 830, 843, 84 Cal.Rptr.3d 452 (Cal.Ct.App. 2008). Here, the Debtor decided not to claim a homestead exemption in her First Amended Schedules after initially claiming the exemption when she filed her case. After the Trustee relied on the First Amended Schedules to settle with the Husband and sell the Property to pay all unsecured claims, the Debtor changed her position and again asserted a homestead exemption, to the detriment of creditors. All of the elements of equitable estoppel are present in this case.

### 1. *Representation or Concealment of Material Fact*

The party against whom equitable estoppel is sought must have represented or concealed a material fact. *Young v. Horizon West, Inc.*, 220 Cal.App.4th 1122, 1131–32, 163 Cal.Rptr.3d 704 (Cal.Ct.App. 2013). Here, the Debtor made a written statement, under penalty of perjury, that she was not claiming a homestead exemption in the Property when she filed her First Amended Schedules. Almost three years later, she changed her schedules to claim an exemption in the Property. The value of the Property was unquestionably material, given the Debtor's limited assets and limited claims against the estate, and the Debtor's amended homestead exemption significantly reduced—if not eliminated—the amount of equity available to pay administrative expenses and creditors of the estate.

### 2. *Made with Knowledge of the Facts*

The representation of concealment must be made with knowledge of the facts. *City of Long Beach v. Mansell*, 3 Cal.3d 462, 491, 91 Cal.Rptr. 23, 476 P.2d 423 (Cal.1970); *Cnty. of Sonoma v. Rex*, 231 Cal.App.3d 1289, 1296, 282 Cal.Rptr. 796 (Cal.Ct.App.1991). "[I]gnorance or mistake will not prevent an estoppel." *Mansell*, 3 Cal.3d at 491, n. 28, 91 Cal.Rptr. 23, 476 P.2d 423. The Debtor knew of her right to claim a homestead exemption in the Property and in fact did claim a homestead exemption in her original schedules. She made the decision to amend her schedules to remove the homestead exemption and claim other exemptions in the First Amended Schedules. Three years after the case was filed and after the Debtor had already filed one set of amended schedules removing the homestead exemption, the Debtor amended her Schedule C for the second time to claim a homestead exemption, after the Trustee had moved forward with the Settlement with the Husband to pursue the sale of the Property. The Debtor was aware of the Settlement with the Husband and never objected. The Debtor was aware of the sale of the Property and never objected. The Debtor was aware of the Trustee's Turnover Motion and never objected. She chose to assert her homestead exemption a second time once she knew about the sale and the settlement, to take advantage of the proceeds generated and prevent a distribution to creditors.

### 3. *To a Party Ignorant of the Truth*

The evidence must show that the party asserting equitable estoppel not only

lacked actual knowledge of the true facts, but also did not have notice of the facts sufficient to put a reasonably prudent person on inquiry. *Life v. Cnty. of Los Angeles,* 227 Cal.App.3d 894, 902, 278 Cal.Rptr. 196 (Cal.Ct.App.1991). *Cole v. City of Los Angeles,* 187 Cal.App.3d 1369, 1376, 232 Cal.Rptr. 624 (Cal.Ct.App.1986). The Trustee had no knowledge or indication that the Debtor was going to file her Second Amended Schedules. *See* Trustee Decl., Docket No. 58, at 13, ¶ 21. The Debtor had not filed an opposition to the Settlement Motion, Turnover Motion, or motion to employ the Broker and had given no signal for nearly three years that she was going to file new schedules and claim a homestead exemption. The Trustee has acted diligently throughout the case and has complied with her duty to administer the estate, sell property of the estate with equity, and enter into compromises with proper parties. *See* 11 U.S.C. §§ 363, 541, 543, 704; Fed. R. Bankr.P. 9019. Based on the foregoing, the court finds that the Trustee was ignorant of the truth for purposes of equitable estoppel.

### 4. *With the Intention That the Ignorant Party Act on It*

 Equitable estoppel requires a finding of intent. *Mansell,* 3 Cal.3d at 490, 91 Cal.Rptr. 23, 476 P.2d 423; *Rex,* 231 Cal.App.3d at 1295, 282 Cal.Rptr. 796. "The defendant need not intend to deceive the plaintiff to give rise to an equitable estoppel." *Superior Dispatch, Inc. v. Ins. Corp. of New York,* 181 Cal.App.4th 175, 186, 104 Cal.Rptr.3d 508 (Cal.Ct.App.2010) (*citing Lantzy v. Centex Homes,* 31 Cal.4th 363, 384, 2 Cal.Rptr.3d 655, 73 P.3d 517 (Cal.2003); *Vu v. Prudential Property & Casualty Ins. Co.,* 26 Cal.4th 1142, 1152–53, 113 Cal.Rptr.2d 70, 33 P.3d 487 (Cal.2001)); *see also Lix v. Edwards,* 82 Cal.App.3d 573, 580, 147 Cal.Rptr. 294 (Cal.Ct.App.1978); *Lovett v. Point Loma Dev. Corp.,* 266 Cal.App.2d 70, 76, 71 Cal. Rptr. 709 (Cal.Ct.App.1968). Silence may be used as evidence of fraudulent intent. *R.D. Reeder Lathing Co. v. Allen,* 66 Cal.2d 373, 378, 57 Cal.Rptr. 841, 425 P.2d 785 (Cal.1967). "To create an equitable estoppel, it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." *Superior Dispatch, Inc.,* 181 Cal.App.4th at 187, 104 Cal.Rptr.3d 508 (citations and quotations omitted).

When the Debtor filed her First Amended Schedules, she removed any claim of exemption in the Property. She received notice of the Settlement with the Husband and was aware that her Husband was to receive half of the net proceeds of the sale of the Property. She did not oppose the Settlement Motion. She also received notice of the Trustee's motion to employ the Broker and the Turnover Motion and did not oppose either motion. The Trustee relied on the Debtor not claiming an exemption, and the Debtor remained silent during all of the activity relating to the Property until the final hour. The court finds that the element of intent is satisfied.

### 5. *That Party Was Induced to Act on It*

 The element of reliance requires that the party asserting equitable estoppel change her position in reliance on something said or done by the other party, resulting in detriment or prejudice to the party asserting equitable estoppel. *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.,* 40 Cal.3d 5, 16, 219 Cal.Rptr. 13, 706 P.2d 1146 (Cal.1985). The change need not be accomplished through an affirmative action; it is enough that a party may have been induced to

refrain from taking steps to retrieve his or her position and to avoid loss. *Citizens Suburban Co. v. Rosemont Dev. Co.,* 244 Cal.App.2d 666, 679, 53 Cal.Rptr. 551 (Cal. Ct.App.1966); *Monteleone v. Allstate Ins. Co.,* 51 Cal.App.4th 509, 518, 59 Cal. Rptr.2d 48 (Cal.Ct.App.1996). The doctrine of equitable estoppel is founded on "justice and good conscience," and on the theory that the party to be estopped has, by declarations or conduct, misled another to her prejudice. *Ware Supply Co. v. Sacramento Sav. & Loan Ass'n,* 246 Cal. App.2d 398, 407, 54 Cal.Rptr. 674 (Cal.Ct. App.1966); *Strong v. Cnty. of Santa Cruz,* 15 Cal.3d 720, 725, 125 Cal.Rptr. 896, 543 P.2d 264 (Cal.1975).

The Trustee, on behalf of all creditors, relied on the Debtor's representation that she was not going to claim a homestead exemption in entering into the Settlement with the Husband and pursuing the sale of the Property. *See* Trustee Decl., Docket No. 58, at 13, ¶ 22. Because of the Debtor's actions in claiming a homestead exemption in the Second Amended Schedules, creditors of the estate are clearly prejudiced because there will now be no funds available for distribution to unsecured creditors. Had the Trustee known of the Debtor's intention, she would not have entered into the Settlement with the Husband to give up 50% of the net sale proceeds from the Property.

The Debtor has created a windfall for the marital community. Absent valid agreement between the spouses or domestic partners, the marital property rights of California domiciliaries are fixed in accordance with California community property law. "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal. Fam.Code § 760. There is no evidence to indicate that the Debtor and her Husband have a premarital agreement removing the effect of community property law. Thus, any funds received by either party become a part of the marital community to benefit both parties.[7]

The Trustee entered into the Settlement with the intention that the Settlement would allow the Husband, and therefore the marital community, to receive funds while allowing creditors and administrative expenses to be paid in full. Because the Debtor has claimed a $100,000 exemption in the Property, after the Husband is paid his half of the proceeds of the sale—proceeds that belong to the marital community—the Debtor will then be paid her homestead exemption, which will also benefit the marital community. As a result, there will not be sufficient funds in the estate to pay the creditors and administrative expenses, as they otherwise would have been had the Debtor not filed her Second Amended Schedules at the eleventh hour.

It is not reasonable for the Debtor to sleep on her rights for nearly three years while the Trustee diligently performs her duties and then amend her schedules to claim a homestead exemption in the Property, reaping benefits for herself while harming all creditors. Based on the foregoing, the court finds that the Trustee was induced to act on the Debtor's representa-

---

7. The Husband states that he and the Debtor "separated on June 19, 2013, . . . have lived separate and apart since that date," and have not had any contact. (Husband's Opposition to the Trustee's Motion for Reconsideration, Docket No. 85, at 3:5–9). Notwithstanding the Husband's assertion that the Debtor is his estranged wife, the parties are still married and based on California marital property laws, the martial community would receive the benefit of all funds.

tions to the detriment of the estate and all creditors.

For the reasons set forth above, the court finds that based on California equitable estoppel, the Debtor's amended homestead exemption shall be disallowed.

## III. CONCLUSION

For the foregoing reasons, the Objection is SUSTAINED.

The court will enter a separate order consistent with this memorandum.