IN RE Rosalva LUA, Debtor.

Rosalva Lua, Appellant,

v.

Elissa Miller, Chapter 7 Trustee, Appellee.

Case No.: CV 15–04026–CJC
2:15–cv–04026

United States District Court,
C.D. California, Southern Division.

Signed November 10, 2015

Bruce Reuben Fink, Law Office of Bruce R. Fink, Santa Ana, CA, for Appellant.

David A. Tilem, David A. Tilem Law Offices, Glendale, CA, for Appellee.

## ORDER AFFIRMING THE BANKRUPTCY COURT'S MAY 1 ORDERS

### CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This case concerns the Chapter 7 bankruptcy proceedings for Rosalva Lua, which were initiated via voluntary petition in July 2011. *In re Rosalva Lua,* Case No. 2:11-bk–41173 (July 21, 2011) ("Bankr. Dkt."). Ms. Lua appeals from the May 1 Bankruptcy Court Orders sustaining an objection from Elissa Miller, the Chapter 7 Trustee, to an attempt by Ms. Lua to claim a homestead exemption. (Bankr. Dkt. 103; 104.) For the reasons that follow, the Bankruptcy Court Orders are AFFIRMED.[1]

### II. BACKGROUND

Ms. Lua (the "Debtor") filed a voluntary Chapter 7 petition on July 21, 2011. (Bankr. Dkt. 1.) Elissa Miller (the "Trustee") was appointed the Chapter 7 trustee. (*See* Bankr. Dkt. 7.) In the original schedules she submitted with her petition, the Debtor indicated that she was married to her non-filing spouse, Rigoberto Lua (the "Husband"), and that they resided at a property located at 2044 Pennywood Pl., Pomona, CA 91767 (the "Property"). (Bankr. Dkt. 1 at 15; 32.) Schedule A listed a 30% interest in the Property, describing the Property as the Husband's property prior to marriage. (*Id.* at 15.) On her original Schedule C, the Debtor claimed a $75,000 "homestead exemption" in the Property under California Civil Procedure section 704.730(a)(1). (*Id.* at 19.)

At a subsequent creditors' meeting, the Debtor testified that she did not have a prenuptial agreement with her Husband and that earnings were used to pay mortgage payments on the Property. *In re Lua,* 529 B.R. 766, 768–69 (Bankr.C.D.Cal. 2015). Based on this information, the Trustee concluded that the Debtor had undisclosed assets, including a tax refund. The Trustee continued the creditors' meeting to allow the Debtor to amend her schedules to properly disclose her assets. *Id.*

On October 13, 2011, the Debtor filed amended schedules indicating that she had no interest in the Property aside from "such community interest as may exist for the purposes of a divorce action." (Bankr. Dkt. 17 at 4.) The Debtor removed the homestead exemption she had previously claimed, instead claiming a "wild card" exemption of other assets under California Civil Procedure Code section 703.140. (*Id.* at 9.)

After the Debtor withdrew her homestead exemption, the Trustee began to investigate the Property and ultimately concluded that the Debtor *did* have an interest in the Property and that that interest could be monetized, either through a sale or an agreement with the Debtor and the Husband to pay in full the unsecured claims against the estate, which totaled approximately $10,000. (Bankr. Dkt. 58 ["Trustee Decl."] at 11.) The Trustee attempted to negotiate an agreement between the Debtor and her Husband that would raise the funds necessary to pay the creditors, but the attempts to reach an agreement were unsuccessful. (*Id.*) As a result, the Trustee filed an adversary

---

1. Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed.R.Civ.P. 78; Local Rule 7–

15. Accordingly, the hearing set for November 16, 2015 at 3:00 p.m. is hereby vacated and off calendar.

proceeding (in bankruptcy court) against the Husband. (*Miller v. Lua,* Case No. 12–ap–01769 (June 6, 2012) ["Adv. Dkt."].) In July 2012, default was entered against the Husband in the adversary proceeding, and in September 2012, the bankruptcy court entered a default judgment against the Husband, finding that the Debtor had a community property interest in the Property and ordering the Husband to provide an accounting. (Adv. Dkt. 16.) After more than a year, the Husband had still failed to comply with the judgment, so the Trustee moved the Bankruptcy Court to modify the judgment and declare *all* of the Property to be community property (thereby avoiding the need for an accounting, which the Husband was refusing to perform). (Trustee Decl. at 12; *see also* Adv. Dkt. 19.) The Bankruptcy Court granted the Trustee's motion to modify the judgment on June 2, 2014, finding that the entire Property was community property and ordering the Husband and the Debtor to turn the Property over to the Trustee so that she could administer it for the benefit of the creditors. (Adv. Dkt. 28.)

In the meantime, the Trustee and the Husband managed to come to an agreement as to the Property. They agreed that the Trustee would sell the Property and that the net proceeds would be divided equally between the estate and the Husband. The Husband and the Trustee also agreed to terms surrounding the sale: the Trustee would employ a broker, and the Husband would "comply with any reasonable request by the broker to view, inspect, and market the Property." (Bankr. Dkt. 39.) The Debtor did not object to this agreement, and the Bankruptcy Court granted the Trustee's motion to approve the compromise between the Husband and the Trustee which would enable creditors to monetize the Debtor's interest in the

Property. The Trustee proceeded to employ a broker and attempt to sell the house.

The Debtor did not comply with the Trustee's efforts to sell the house. She "refused to cooperate with the marketing efforts and interfered with the actions of the [b]roker," including by failing to answer calls and thwarting at least nine appointments to show the Property by denying access to it. *In re Lua,* 529 B.R. at 770; (*see also* Bankr. Dkt. 58 at 15.) Frustrated by the Debtor's intransigence, the Trustee filed a motion requesting turnover of the Property, which the Bankruptcy Court granted on July 7, 2014. (Bankr. Dkt. 52; 54.) Around the same time, the Debtor vacated the Property, after removing the front door from its hinges. (Bankr. Dkt. 58 at 17.)

On July 21, 2014—three years to the day from the filing of her voluntary petition— the Debtor filed another set of Amended Schedules. (Bankr. Dkt. 56.) Her Amended Schedule A stated that she had a community property interest in the Property, and her Amended Schedule C claimed a $100,000 homestead exemption in the Property. (*Id.* at 6; 11.) As the Bankruptcy Court explained, these Amended Schedules had the effect of ensuring that creditors would not be paid. The Debtor chose to protect her personal assets using the wild card exemption in 2011, so the Trustee did not pursue that (exempted) property and instead pursued the Debtor's interest in the Property, engaging in significant litigation to establish that interest and then to sell the Property. At the last minute, the Debtor modified her Schedules to switch back to the homestead exemption, meaning that the "Debtor's creditors [stood] to recover nothing from the sale of the Property after the costs of the sale, payment of taxes, and payment to the Husband." *In re Lua,* 529

B.R. at 771. The Trustee filed an objection to the Debtor's Amended Schedules, asserting bad faith, estoppel, and laches as equitable grounds to disallow the homestead exemption. (Bankr. Dkt. 58.) The Debtor filed an untimely opposition to the objection, which the Bankruptcy Court disregarded. The Bankruptcy Court then ordered supplemental briefing addressing the impact of *Law v. Siegel,* —— U.S. ——, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014), on the question of whether the Bankruptcy Court could disallow the homestead exemption under 11 U.S.C.A. § 105(a) or whether it could only do so on state law grounds. After the parties submitted supplemental briefing on *Siegel,* the Bankruptcy Court sustained the Trustee's objection to the homestead exemption on state law equitable estoppel grounds. (Bankr. Dkt. 103; 104.) The Debtor appealed.

## III. DISCUSSION

### 1. Issue on Appeal

The only issue argued by the Debtor in her briefing before this Court is whether the Bankruptcy Court properly sustained the Trustee's objection to the Debtor's homestead exemption on the ground of equitable estoppel.

### 2. Standard of Review

▆ A district court has jurisdiction to hear appeals from final judgments of the bankruptcy courts. 28 U.S.C. § 158(a)(1); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs),* 339 F.3d 782, 787 (9th Cir. 2003). On appeal, a district court must review a bankruptcy court's legal conclusions *de novo* and its factual findings for

clear error. *Neilson v. United States (In re Olshan),* 356 F.3d 1078, 1083 (9th Cir. 2004). A finding of fact is clearly erroneous only where it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Pineda–Doval,* 692 F.3d 942, 944 (9th Cir.2012). Clear error review is deferential, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Working,* 224 F.3d 1093, 1102 (9th Cir.2000).

▆ An order denying a debtor's claim of exemption is an appealable final order, and "the right of a debtor to claim an exemption is a question of law ... review[ed] de novo." *In re Elliott,* 523 B.R. 188, 191 (9th Cir. BAP 2014). A debtor's intent, however, is a "question of fact to be reviewed under the clearly erroneous standard." *In re Kelley,* 300 B.R. 11, 16 (9th Cir. BAP 2003).

### 3. Analysis

▆ Bankruptcy courts may disallow exemptions on state law grounds. *Law v. Siegel,* —— U.S. ——, 134 S.Ct. 1188, 1196–97, 188 L.Ed.2d 146 (2014) ("It is of course true that when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption."); *In re Gray,* 523 B.R. 170, 175 (9th Cir. BAP 2014) (remanding for the bankruptcy court to consider whether Arizona equitable considerations could be used to deny an exemption).[2] Here, the Bank-

---

**2.** Prior to *Law,* bankruptcy courts routinely used their discretion under 11 U.S.C.A. § 105(a) to deny exemptions based on bad faith or prejudice. *Law* held that "federal law provides no authority for bankruptcy courts

to deny an exemption on a ground not specified in the Code," and because the Code did not specify bad faith or prejudice, bankruptcy courts were limited to invoking state law in

ruptcy Court disallowed the Debtor's homestead exemption on the ground of equitable estoppel. The Debtor does not challenge that equitable doctrines of estoppel apply to homestead claims or exemptions. *See, e.g., Jefferson v. Tom,* 52 Cal. App.2d 432, 436–37, 126 P.2d 387 (Cal.Ct. App.1942) (denying homestead claim on grounds of estoppel and laches); *In re Moore,* 269 B.R. 864, 869 (Bankr.D.Idaho 2001) (applying judicial estoppel to homestead exemption); *In re Steward,* 227 B.R. 895, 899 (9th Cir. BAP 1998) (applying estoppel principles to homestead exemption and concluding homeowner was not estopped from claiming homestead exemption). Instead, the Debtor argues that the Bankruptcy Court incorrectly applied the elements of equitable estoppel to these facts.

■ To invoke equitable estoppel under California law, a party must show: "(a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." *Simmons v. Ghaderi,* 44 Cal.4th 570, 584, 80 Cal.Rptr.3d 83, 187 P.3d 934 (2008).

#### a. Representation or Concealment of Material Fact

The party against whom equitable estoppel is sought must have represented or concealed a material fact. *Young v. Horizon West, Inc.,* 220 Cal.App.4th 1122, 1131–32, 163 Cal.Rptr.3d 704 (Cal.Ct.App. 2013). Here, the Debtor's First Amended Schedules—submitted to the Court under a penalty of perjury in October 2011— qualify as a "representation" that the Debtor was not claiming a homestead ex-

emption in the Property. This representation alone meets the element for equitable estoppel. Additionally, the Debtor's silence in the face of *years* of efforts by the Trustee to extract value from the Property in order to pay creditors qualifies as a "concealment" for the purposes of equitable estoppel. The Debtor concealed from the Trustee and the Bankruptcy Court the fact that she would amend her Schedules as soon as the sale of the Property produced value. It is also beyond dispute that these representations and concealments involve material facts. The Debtor's assets were very limited, and the Trustee was essentially left to pursue any assets tied up in the Property. The value of the Property—and especially whether the Debtor would claim that value as exempt—was clearly material to this litigation. This element of equitable estoppel is therefore met.

#### b. Made with Knowledge of the Facts

■ The party against whom estoppel is sought must also have had knowledge of the facts, although "ignorance or mistake will not prevent an estoppel" when a party makes an affirmative statement of facts rather than remains silent. *City of Long Beach v. Mansell,* 3 Cal.3d 462, 491 & n. 28, 91 Cal.Rptr. 23, 476 P.2d 423 (1970). Here, the Debtor knew she had a right to claim a homestead exemption in the Property; that is exactly what she did when she filed her initial bankruptcy petition. She now claims that she came to believe that the she had extinguished any community property interest she may have had in the Property by granting a deed to the Husband several years before these proceedings began, and that is why she withdrew her homestead exemption. Once the Bankruptcy Court declared the Property to be community property, the Debtor argues, she was entitled to once again claim an exemption. But accepting

order to deny exemptions on those grounds,

and not § 105(a). *Law,* 134 S.Ct. at 1197.

this argument would simply shift the costs of the Debtor's mistake to the Trustee and creditors. The Debtor made the strategic decision to forgo a possible homestead exemption in favor of protecting personal property. She cannot now backtrack, after considerable effort and litigation by the Trustee to establish the Debtor's interest in the property, and claim that her mistake regarding the character of the Property permits her to pull the rug out from under her creditors.

Even crediting the Debtor's assertion that she misunderstood the character of the Property, however, the Bankruptcy Court ruled in September 2012 that the Debtor had *some* community property interest in the Property, (Adv. Dkt. 16), and still the Debtor remained silent for *almost two years* despite knowing—at that point—that she could claim an exemption protecting her share of the community property interest, whatever it may be. She cannot now claim that she was ignorant of the fact that she had an interest in the Property until the Trustee—despite the Debtor's best efforts—successfully sold the Property and settled with the Husband. The fact of the matter is that the Debtor has understood since at least June 2012, when the adversary proceeding against the Husband was filed, that the Trustee was pursuing the Debtor's interest in the Property. The Debtor never objected to the settlement with the Husband, to the sale of the Property, or to the Trustee's Turnover Motion. She had more than adequate knowledge of the fact that she had an interest in the Property, but she led the Trustee and the Bankruptcy Court along by waiting until the last minute to assert her homestead exemption. The "knowledge of the facts" element of equitable estoppel is met.

### c. To a Party Ignorant of the Truth

To successfully invoke equitable estoppel against the Debtor, the Trustee must also demonstrate that it was "ignorant, actually and permissibly, of the truth." *Simmons,* 44 Cal.4th at 584, 80 Cal. Rptr.3d 83, 187 P.3d 934. The Trustee has done so. The Trustee testified that "[a]t no point after Debtor amended her schedules in 2011 was I ever aware that Debtor intended to claim a homestead exemption in the Property." (Trustee Decl. at 13 ¶ 21.) Indeed, there is no reason for the Trustee to have been aware. The Debtor had not opposed to the motion for approval of the settlement between the Trustee and the Husband, had not opposed the Turnover Motion, had not opposed the motion to employ a broker to sell the Property, and had—as the Bankruptcy Court observes—"given no signal for nearly three years that she was going to file new schedules and claim a homestead exemption." *Lua,* 529 B.R. at 777. The Trustee had diligently pursued the Debtor's interest in the Property in an attempt to pay creditors. There is no reason to say that the Trustee should have known of the Debtor's plan.

### d. With the Intention That the Party Act on It

Equitable estoppel requires a finding of intent. *Mansell,* 3 Cal.3d at 490, 91 Cal. Rptr. 23, 476 P.2d 423. Intent is a question of fact that this Court reviews for clear error. *Kelley,* 300 B.R. at 16. Here, the Bankruptcy Court did not clearly err in determining that the Debtor intended the Trustee to act on her representation that she would not claim a homestead exemption. The Debtor took the wild card exemption instead of the homestead exemption, clearly putting the Property up for grabs and intending that the Trustee take her best shot at the Property, and not her personal property. She now claims that the Court's finding that the Property was community property was "unantic-

ipated and unnecessary," and that the Trustee got "greedy and creative" leading to the Debtor's modified Schedules. (Dkt. 15 at 9.) These arguments defy reason. The Debtor announced that she was not taking a homestead exemption, watched the Trustee spend three years and considerable resources trying to extract value from the Debtor's only non-exempt assets, and now claims that the Trustee should not have acted on the Debtor's assertion that she was not taking a homestead exemption. The Bankruptcy Court did not clearly err in finding the requisite intent.

### e. That Party Was Induced to Act on It

 The element of reliance requires that the party asserting equitable estoppel change her position in reliance on something said or done by the other party, resulting in detriment or prejudice to the party asserting equitable estoppel. *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.*, 40 Cal.3d 5, 16, 219 Cal.Rptr. 13, 706 P.2d 1146 (1985). Here, the Trustee—relying on the Debtor's representation that she was not going to claim a homestead exemption—initiated litigation to establish the Debtor's interest in the Property, entered a settlement with the Husband, employed a broker, and sold the Property in an effort to compensate creditors. As the Bankruptcy Court explained, "Because of the Debtor's actions in claiming a homestead exemption in the Second Amended Schedules, creditors of the estate are clearly prejudiced because there will now be no funds available for distribution to unsecured creditors. Had the Trustee known of the Debtor's intention, she would not have entered into the [s]ettlement with the Husband to give up 50% of the net sale proceeds from the Property." *Lua*, 529 B.R. at 778. The Debtor's affirmative representation that she would not take a homestead exemption and subsequent silence in the face of efforts by the Trustee to obtain funds for creditors plainly in-

duced the Trustee to act as it did. And there can be little question that the estate has been prejudiced as a result. As a result, each of the elements of equitable estoppel has been met here.

The California Supreme Court has held that equitable estoppel "rests firmly upon a foundation of conscience and fair dealing." *Mansell*, 3 Cal.3d at 462, 91 Cal.Rptr. 23, 476 P.2d 423. It cannot be disputed that the Debtor did not deal fairly with the Trustee. She remained silent for three years despite knowing that the Trustee was pursuing the Property in an attempt to compensate creditors, then amended her schedules at the last minute to nullify the Trustee's significant efforts and reap a windfall for herself and the marital community. Because of this significant inequity, and because the elements of equitable estoppel are met, the Bankruptcy Court's denial of the Debtor's homestead exemption is AFFIRMED.

### IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's May 1 Orders are AFFIRMED.