

FILED

MAR 25 2022

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>RIZAL JUCO GUEVARRA,<br>　　　　　　Debtors. | BAP No.　EC-21-1141-SFL<br><br>Bk. No.　2:18-bk-25306 |
| RIZAL JUCO GUEVARRA,<br>　　　　　　Appellant,<br>v.<br>DOUGLAS M. WHATLEY,<br>　　　　　　Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher D. Jaime, Bankruptcy Judge, Presiding

APPEARANCES:
Mark T. O'Toole argued for appellant; Barry H. Spitzer argued for appellee.

Before: SPRAKER, FARIS, and LAFFERTY, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

The bankruptcy court held that debtor Rizal Guevarra was equitably estopped from amending his exemption. Guevarra appeals this decision.

1

The bankruptcy court found that Guevarra induced the chapter 7[1] trustee to sell his joint interest in real property by denying any interest and by failing to exempt the real property in his original schedules. The court based its decision on an unduly narrow understanding of Guevarra's position. The record demonstrates that the trustee was fully apprised of the facts concerning Guevarra's ownership and his argument that he held his interest in a resulting trust for his nephew. As such, the trustee cannot prove all the elements of equitable estoppel. Therefore, we REVERSE.

### FACTS[2]

Many of the facts set forth below are drawn from this Panel's prior decision in *Guevarra v. Whatley (In re Guevarra)*, BAP No. EC-20-1165-LBT, 2021 WL 1179619 (9th Cir. BAP Mar. 29, 2021). Guevarra commenced his bankruptcy case in August 2018. Douglas M. Whatley was appointed to serve as the chapter 7 trustee. Guevarra listed in his schedules real property located in North Highlands, California (the "Property"). More specifically, in response to the question in Schedule A/B "Do you own or have any legal or equitable interest in any residence, building, land, or similar property," he answered "yes" and listed the Property by its street

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of the documents filed in Guevarra's bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

address. In the space provided in the schedule for describing the nature of his ownership interest, he stated: "[c]o-signed for Nephew; Debtor has no interest in property." He valued the Property at $217,612 but stated that the value of the portion he owned was "0.00." Guevarra also listed the loan secured by the deed of trust encumbering the Property as a secured debt in his Schedule D.

Consistent with his Schedule A/B, Guevarra did not exempt any interest in the Property. He did, however, claim an exemption under California Code of Civil Procedure ("CCP") § 703.140(b)(5)—also known as California's "wild card" exemption—for $310.00 in his bank accounts and $22,306.20 in a 401(k) account.

The deed for the Property listed Guevarra and his nephew Daryl Guevarra as joint tenants. Indeed, Guevarra never denied this. By the time of the § 341(a) hearing held in September 2018, or shortly thereafter, the trustee knew that Guevarra and Daryl held title to the Property as joint tenants. Almost immediately, the trustee disagreed with Guevarra's assertion that he had no interest of value in the Property. On December 13, 2018, the trustee's counsel wrote to Daryl to advise him that the bankruptcy estate asserted an interest in the Property. As counsel explained to Daryl, "[a]ccording to the documents provided by your uncle, you and he are on title to the real property . . . ."

Guevarra's counsel responded to the trustee's counsel roughly a week later committing to provide the trustee with documents showing that

3

Guevarra did not live at the Property and had not made any payments on the loan. Nonetheless, based on Guevarra's joint tenancy interest, the trustee continuously asserted that 50% of any equity in the Property was property of the bankruptcy estate. And Guevarra continuously countered that while the deed granted him joint title to the Property, he did not hold any interest in the Property.

The trustee sued Daryl to sell the Property under § 363(h) and obtained entry of default. Instead of seeking default judgment in the adversary proceeding, however, the trustee moved to sell Guevarra's interest in the Property.[3] The trustee proposed to sell Guevarra's interest to Global Capital Concepts, Inc. for $32,000 subject to existing liens. The motion identified Guevarra as a joint tenant together with his nephew under the Grant Deed and disclosed a deed of trust against the Property.

Despite Guevarra's titled interest, the motion to sell disclosed that "if a Court of competent jurisdiction determines the bankruptcy estate did not have an interest in the Subject Property, the bankruptcy estate will refund the money paid by the Buyers." Though the trustee did not say why the estate might not have an interest in the Property, the motion discussed the trustee's strong-arm rights under the Bankruptcy Code. Specifically, the trustee argued that his status as a bona fide purchaser for value under

---

[3] After he succeeded in selling Guevarra's interest, the trustee voluntarily dismissed the adversary proceeding.

§ 544(a)(3) entitled the estate to sell its interest "free of a prior equitable interest or constructive trust interest."[4]

Guevarra's counsel obtained leave to file a late, terse six-sentence opposition to the sale motion without a declaration or other evidence. In it, Guevarra merely restated his position that he only was a co-signer on his nephew's home loan and therefore had no genuine economic interest in the Property. Rather than offer any analysis, the opposition advised that Guevarra would move to convert the case to chapter 13 and asked that the sale motion be continued so that it could be heard with the to-be-filed conversion motion. Guevarra's counsel filed the motion to convert the case to chapter 13 the day before the hearing on the trustee's motion to sell. The motion acknowledged that it was filed to "save his nephew's home."

At the sale hearing, the bankruptcy court noted Guevarra's argument that he did not have any interest in the Property and was merely a co-signer on the loan. The court observed that this argument was consistent with Guevarra's schedules but was otherwise unsupported by any evidence. Based on the deed and deed of trust, the court ruled that Guevarra's joint tenancy interest was estate property.

Though the recently filed motion to convert was not on the calendar, Guevarra's counsel advised the court of it and asked that the sale motion

---

[4] Counsel for the trustee submitted a fee application after the court approved the sale. His billing entries detail at least 3.3 hours researching Guevarra's interest in the Property and discussing the topic with the trustee. This included 1.8 hours researching constructive and resulting trusts.

be continued to a date when both matters could be heard. The court responded that Guevarra did not have a right to convert his case because he had acted in bad faith by knowingly misstating his interest in the Property on the schedules. Responding to the issue of bad faith, Guevarra's counsel informed the court that "I produced proof to the trustee that he never made a down payment and doesn't live in the house and that the nephew's made every payment." The court replied, "[t]hat doesn't matter, he's on the title." Guevarra's counsel then offered to cite applicable cases on the issue, stating that he had previously provided them to trustee's counsel though they were not included in the opposition. The court did not accept the offer for supplemental briefing. In its findings of fact and conclusions of law approving the sale, the court found that Guevarra believed he was on title and "yet filed the schedules incorrectly stating he was a co-signer."

The bankruptcy court approved the sale of Guevarra's interest in the Property to a competing bidder for $32,500. The court entered its sale order in December 2019, and the trustee closed the sale. Guevarra did not appeal either the sale order or the order denying his motion to convert.

In March 2020, Guevarra amended his schedules. By this time, Guevarra's counsel had been suspended from the practice of law. Guevarra filed his amended schedules pro se. In his amended Schedule A/B, he continued to list the value of his 50% interest in the Property as "$0.00." However, he described the nature of his ownership interest as: "Debtor

6

interest in said property it [sic] was sold for $32,500 by chapter 7 trustee[.]" In the space provided for additional information, Guevarra put: "Debtor claims said funds under exemption statute CCP 703." In his amended Schedule C, Guevarra claimed $27,915 of these sale proceeds as exempt under California's "wild card" exemption.[5]

The trustee objected to Guevarra's amended exemption. According to the trustee, Guevarra had acted in bad faith and was equitably estopped from asserting the exemption claim. The trustee pointed out that Guevarra had insisted since the commencement of his chapter 7 case that he had no interest of value in the Property. The trustee additionally noted that it had taken Guevarra nineteen months from the commencement of his case to amend his schedules to claim the exemption in the Property (or its proceeds). The trustee explained that had he known Guevarra would claim an interest and an exemption in the proceeds he would not have sold the Property.

In support of the objection, the trustee filed the declaration of his counsel stating that he had spoken to Guevarra's counsel to discuss the ownership issue and requested documents. The trustee submitted his counsel's December 13, 2018 letter to Daryl informing him of the estate's interest in the Property based on the deed and deed of trust. The trustee

---

[5] Guevarra's amended Schedule C also still claimed a "wild card" exemption in his bank accounts, which he still valued at $310. As for his 401(k) account, he claimed that as exempt in his amended Schedule C under CCP § 703.140(b)(10)(E).

7

also included the response from Guevarra's counsel dated December 19, 2018, committing to provide documents to establish that Guevarra never paid any money for the Property and never lived there, whereas Daryl paid all the monies owed on the Property including the down payment and lived there.

Guevarra opposed the objection in another terse document. As he explained, he never attempted to hide the Property from the trustee, and he correctly identified it in his original schedules. Guevarra explained that he changed his wild card exemption after the court ruled that he owned 50% of the Property. For the first time, he submitted case law to support his argument, citing *Johnson v. Johnson*, 192 Cal. App. 3d 551, 555-56 (1987), *Siegel v. Boston (In re Sale Guaranty Corp.)*, 220 B.R. 660, 664 (9th Cir. BAP 1998), *aff'd*, 199 F.3d 1375 (9th Cir. 2000), and *Law v. Siegel*, 134 S. Ct. 1188 (2014). The *Johnson* and *Sale Guaranty* cases address California's recognition of resulting trusts. Specifically, these cases hold that a transferee of property who does not pay the purchase price for the real property "is presumed to hold the property in a resulting trust for the party who paid the consideration." *In re Sale Guar. Corp.*, 220 B.R. at 664; *Johnson*, 192 Cal. App. 3d at 555-56.

Guevarra also submitted a declaration from Daryl in support of the opposition. Daryl's declaration was consistent with Guevarra's argument: his uncle only co-signed the home loan and was placed on title so that he (Daryl) could qualify for the loan. Daryl further stated that he and his wife

had always lived in the home situated on the Property, that he always made the loan payments, and that he and Guevarra never intended for Guevarra to hold any interest of value in the Property.

The bankruptcy court denied the amended exemption without a hearing. The court ruled that California law requires exemptions to be claimed in good faith and to benefit the person taking the exemption. The bankruptcy court found that Guevarra claimed his wild card exemption for the improper purpose of protecting Daryl's property. Consequently, the bankruptcy court sustained the trustee's exemption claim objection.

On appeal, we vacated and remanded. We held that California's wild card exemption does not require debtors to harbor an intent to use the exempt property for any particular purpose. Rather, debtors were free to use property in which they claimed a wild card exemption for whatever purpose they saw fit.

Pertinent to the matter currently before us, we noted that California law presumes that a joint tenant who does not pay for real property holds bare legal title subject to a resulting trust. Citing *Johnson* and *Sale Guaranty*, we observed:

> Both cases involved resulting trusts. Under California law, if a transferee of property does not pay the purchase price for the property, the transferee is presumed to hold the property in a resulting trust for the party who paid the consideration for its purchase. Further, if a bankruptcy trustee has constructive notice of the resulting trust, it cannot be avoided under the trustee's strong-arm powers. But Debtor did not indicate on his

9

schedules that he held the Property in a resulting trust, nor did he ever request any adjudication of these issues.

*In re Guevarra*, 2021 WL 1179619, at *2 n.4 (citations omitted).

We remanded the case to the bankruptcy court to consider the trustee's equitable estoppel argument. On remand, the bankruptcy court permitted the parties to file supplemental briefs. Guevarra, represented by new counsel, filed a supplemental brief that argued he was not the legal owner of the Property. As asserted in the supplemental brief, a resulting trust arose because Guevarra did not make any payments towards the purchase and had never lived on the Property. Guevarra filed his declaration to support his argument. Once again, he stated that he had never made any payments towards the purchase of the Property, never lived in it, and had always intended that it would be Daryl's property.

In his supplemental brief, the trustee argued that Guevarra should not be rewarded for his lengthy inaction in light of the trustee's costly administration of the asset. The trustee did not, however, dispute that Daryl lived on the Property, made all the payments on the loan, or that his uncle had merely intended to help him purchase his residence. Nor did he address the discussion of resulting trust cited in our decision remanding the matter and in Guevarra's supplemental briefing.

The bankruptcy court again ruled on the matter without argument. It sustained the objection to the amended exemption based on equitable estoppel. Guevarra timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion when it applied equitable estoppel to sustain the trustee's objection to Guevarra's exemption claim?

## STANDARD OF REVIEW

We review the bankruptcy court's decision whether to apply equitable estoppel for an abuse of discretion. *Parker v. Smith (In re Smith)*, BAP No. EC–16–1140–BJuTa, 2017 WL 1457942, at *4 (9th Cir. BAP Apr. 24, 2017) (citing *Leong v. Potter*, 347 F.3d 1117, 1121 (9th Cir. 2003)); *see also In re Guevarra*, 2021 WL 1179619, at *5 (citing California law and stating that the application of equitable estoppel is matter of discretion for the bankruptcy court).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or its factual findings are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

### A. Law generally governing exemptions.

When a debtor files a chapter 7 petition, the debtor's legal and equitable interests in property as of the petition date become property of

the bankruptcy estate, subject to the debtor's right to exempt certain property of the estate. *Schwab v. Reilly*, 560 U.S. 770, 774 (2010). The Bankruptcy Code includes a list of federal bankruptcy exemptions but also permits states to "opt out" of the federal exemption scheme and offer their own list of exemptions. *Phillips v. Gilman (In re Gilman)*, 887 F.3d 956, 964 (9th Cir. 2018) (citing § 522(b)(2), (b)(3)(A), (d)).

California has opted out of the federal exemption scheme and permits its debtors only those exemptions allowable under state law. CCP § 703.130. As a result, though the bankruptcy court has jurisdiction to decide the merits of Guevarra's exemption claims, the allowance or disallowance of his claims is governed by California law. *In re Gilman*, 887 F.3d at 964 (citing *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 334 (9th Cir. BAP 2016)).

California exemptions are liberally construed in favor of the debtor. *Elliott v. Weil (In re Elliott)*, 523 B.R. 188, 192 (9th Cir. BAP 2014). And we must determine Guevarra's exemption rights as they existed on the date he filed his bankruptcy petition. *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012).

Debtors in bankruptcy have a general right to amend their schedules, including their exemptions, at any time before the case is closed. Rule 1009(a). Bankruptcy courts have no equitable authority under federal law to restrict this right based on a perception of bad faith or prejudice to creditors. *Gray v. Warfield (In re Gray)*, 523 B.R. 170, 173-75 (9th Cir. BAP

12

2014) (citing *Law*, 134 S. Ct. at. 1196-97). On the other hand, such equitable power might be derived from state law if state law provides an equitable basis for disallowing the amended exemption. *Id*. at 175 (citing *Law*, 134 S. Ct. at 1196-97).

Here, the bankruptcy court applied California equitable estoppel law to disallow Guevarra's amended wild card exemption. Guevarra challenges this application. Thus, we must consider the elements for applying equitable estoppel under California law and whether the bankruptcy court correctly determined that all the requisite elements were satisfied.

## B.     Equitable estoppel and exemption claims.

Both the Ninth Circuit and this panel generally have observed that equitable estoppel can be invoked to sustain objections to California exemptions. *In re Gilman*, 887 F.3d at 966; *In re Guevarra*, 2021 WL 1179619, at \*5. When equitable estoppel is raised in an objection to an exemption, the objecting party bears the burden of proof to establish the elements of equitable estoppel. *In re Smith*, 2017 WL 1457942, at \*5 (citing *Domarad v. Fisher & Burke, Inc.*, 270 Cal. App. 2d 543, 556 (1969)); *see also Transp. Clearings-Bay Area v. Simmonds*, 226 Cal. App. 2d 405, 427–28 (1964) (stating that "[t]he doctrine of estoppel must be applied strictly and established in every particular"). To successfully invoke equitable estoppel under California law, the objecting party must establish:

"(a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it."

*In re Guevarra*, 2021 WL 1179619, at \*5 (quoting *Simmons v. Ghaderi*, 44 Cal. 4th 570, 584 (2008)).

Bankruptcy courts in California have applied equitable estoppel to deny exemptions in similar situations where a debtor amended exemptions after the bankruptcy estate administered an asset. In *In re Aubry*, 558 B.R. 333 (Bankr. C.D. Cal. 2016), the trustee reopened the debtor's case to administer a previously undisclosed annuity from which the debtor was receiving annual payments. Aubry did not amend her exemptions to exempt the annuity until after the trustee had recovered one of the annual annuity payments. She exempted the annuity nearly two years after she filed her bankruptcy and more than a year after the trustee had reopened her case. When her case was reopened, she had even amended her exemptions but had not exempted the annuity. *Id.* at 341-42.

The court held that Aubry was equitably estopped from claiming an exemption in the annuity. The court found that her failure to exempt the annuity when the trustee reopened and administered the undisclosed asset constituted a representation that she would not amend her exemptions. *Id.* at 346. It also held that her failure to exempt the annuity in a timely manner qualified as a concealment of her intent to exempt the annuity. *Id.* The court

found that Aubry knew, or should have known, that she had the opportunity to exempt the annuity and her failure to do so would constitute knowledge that she was representing she would not exempt the asset. *Id.* at 346-47. It also held that the trustee had proven the remaining elements necessary to estop Aubry from amending her exemptions. *Id.* at 349-50.

A year after *Aubry*, the Ninth Circuit issued its unpublished decision in *Lua v. Miller (In re Lua),* 692 F. App'x 851, 852–53 (9th Cir. 2017), reversing the denial of an amended exemption based on equitable estoppel. In *Lua*, the debtor originally listed an interest in her residence as part of her schedules and exempted the interest under California's homestead exemption. She then amended her schedules to say that she "had no interest in the Property other than 'such community interest as may exist for the purposes of a divorce action.'" *In re Lua*, 529 B.R. 766, 769 (Bankr. C.D. Cal.), *aff'd*, 551 B.R. 448 (C.D. Cal. 2015), *rev'd and remanded*, 692 F. App'x 851 (9th Cir. 2017). The amended schedules stated that the residence was owned by her husband and two other members of his family. *Id.* In keeping with these amendments, Lua also amended her Schedule C to omit her prior homestead exemption. *Id.*

The chapter 7 trustee spent almost three years litigating with Lua and her non-debtor husband to sell the residence. The court ultimately held the entirety of the residence was community property and ordered that it be turned over to the trustee. It was only after the trustee obtained an order

compelling Lua to turn over possession of the residence that she finally vacated the property and permitted the trustee to sell it. *Id.* at 770-71. Roughly a month after Lua vacated the property, she filed her second amended schedules to claim a $100,000 homestead exemption under California law. *Id.* at 771.

The bankruptcy court held that Lua was equitably estopped from amending her exemption, and the district court affirmed. On appeal, the Ninth Circuit reversed. It explained that the debtor's first amended exemption "cannot form the basis of an estoppel because [it] set forth all of the existing facts known to Lua." 692 F. App'x at 852. The Ninth Circuit further found that "nothing in Lua's First Amended Schedules can be deemed a representation by Lua that she would not amend her exemptions again if circumstances changed." *Id.* at 853. The Ninth Circuit held that despite the trustee's administration of the residence, she was not equitably estopped from amending her exemption because her circumstances changed when "the bankruptcy court entered an order finding that the Property was 100% community property, providing Lua a new factual basis to claim a homestead exemption." *Id.*

After *Lua,* the bankruptcy court in *In re Gonzalez*, 620 B.R. 296 (Bankr. C.D. Cal. 2019), also applied equitable estoppel to deny the debtor's amended homestead exemption. Gonzalez, a real estate broker, originally disclosed a residence and commissions held by his realty corporation. *Id.* at 302-04. Postpetition, Gonzales received and spent a significant amount of

the outstanding commissions. The trustee informed Gonzalez that under California law he could exempt either the commissions under California's bankruptcy-like exemptions or the homestead under its general nonbankruptcy exemptions, but not both.[6] *Id.* at 304. After the trustee sued him for turnover of the commissions, Gonzalez amended his schedules to exempt roughly $28,000 in commissions under California's bankruptcy-like exemptions of CCP § 703.140(b). *Id.* at 305-06. Ultimately, the parties agreed that Gonzalez could exempt roughly $20,000 of the commissions and asked the court to decide whether the balance qualified as exempt tools of the trade. *Id.* at 306-07.

While the decision was pending, the trustee retained a real estate broker to sell Gonzalez's residence. Gonzalez did not object to the broker's employment but instead filed his third amended schedules to restate the value of his residence at a higher value and exempt the resulting equity under California's nonbankruptcy exemptions. *See* CCP § 704.010, *et seq.* The trustee objected to the homestead exemption. 620 B.R. at 308-09.

The bankruptcy court sustained the trustee's objection, holding that Gonzalez was equitably estopped from exempting the homestead. The court read *Lua* narrowly for the proposition that a debtor's omission of an exemption from her initial schedules did not by itself constitute a

---

[6] California permits bankruptcy debtors to choose either the bankruptcy exemptions of CCP § 703.140(b) or California's nonbankruptcy exemptions but not both. CCP § 703.140(a).

representation that she would not later amend her schedules to claim an exemption for purposes of equitable estoppel. *Id.* at 325. It pointed out that both the debtor and the trustee in *Lua* had access to the same set of facts. As a result, there could be no concealment of the true facts in that situation. *Id.* In contrast, the court noted that Gonzalez repeatedly advised the trustee that he affirmatively chose to elect the "bankruptcy-like" California exemptions under CCP § 703.140(b) to exempt his commissions to the exclusion of the homestead exemption available under the nonbankruptcy exemptions of CCP § 704.010, *et seq.* Additionally, it distinguished *Lua* by noting that Gonzalez did not involve a bona fide material change in circumstances that triggered his switch to the homestead exemption under California's non-bankruptcy exemptions. *Id.* at 325-26. Gonzalez's election and actions established the elements for equitable estoppel. *Id.* at 313-14, 319-20, 325-26.

With these decisions in mind, we turn to the merits of the issue on appeal.

**C.    The bankruptcy court erred when it denied Guevarra's amended wild card exemption based on equitable estoppel.**

"The doctrine of equitable estoppel is based on the theory that a party who by his declarations or conduct misleads another to his prejudice should be estopped from obtaining the benefits of his misconduct." *Cotta v. City & Cnty. of San Francisco*, 157 Cal. App. 4th 1550, 1567 (2007) (quoting *Kleinecke v. Montecito Water Dist.*, 147 Cal. App. 3d 240, 245 (1983)).

18

Accordingly, the trustee was required to prove some misrepresentation or concealment of a material fact. *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1149–1152 (2001).

The bankruptcy court found that Guevarra had "concealed the 'wild card' exemption otherwise available to exempt his interest in the Property." The court explained that Guevarra did so by repeatedly declaring that he held no interest in the Property or that it was valueless, and by not taking the exemption in his original schedules. Guevarra's purported denial of any interest in the Property is the cornerstone of the trustee's argument to deny the amended exemption. It informs each element necessary to establish equitable estoppel. Therefore, we first address the denial of ownership before considering the court's finding that Guevarra concealed an intent to exempt his interest in the Property.

### 1.     Guevarra's "representation" regarding his ownership interest.

Guevarra, or his counsel, indisputably stated on several occasions that he had no interest in the Property. But such statements were part of a broader, more nuanced resulting trust argument under California and bankruptcy law that Guevarra held bare legal title to the Property and held equitable title in trust for his nephew's benefit. Guevarra never articulated this argument to the court in such a direct manner until the supplemental briefing on equitable estoppel after our remand. But for purposes of equitable estoppel, when Guevarra presented his resulting trust theory to the court is largely irrelevant. Equitable estoppel focuses on the

19

representation(s) to the party allegedly prejudiced. *See Simmons*, 44 Cal. 4th at 584-85. Here, the relevant party is the trustee, and the record is clear that Guevarra early on informed the trustee, through his counsel, of the facts and law supporting the resulting trust argument.

Guevarra listed the Property in his original Schedule A/B, disclosing an interest in the Property. Though he provided a valuation of the Property, he valued his interest at zero. In the schedule, he explained that he merely co-signed on the loan for his nephew to acquire the Property. The record does not include what information, if any, Guevarra provided the trustee at the meeting of creditors. So, we do not know what was asked, or said, about Guevarra's interest at that time. But the letter sent by the trustee's counsel afterwards reveals that Guevarra provided him with the Grant Deed which established Guevarra's joint tenancy interest.

More importantly, Guevarra never denied that the Grant Deed gave him a joint legal interest in the Property. Rather, he consistently argued that he had merely helped his nephew to purchase the Property. Guevarra maintained that his nephew wholly owned the Property despite the clear language of the Grant Deed. By December 2018, Guevarra's counsel had advised the trustee's counsel that the nephew had always lived at the Property and had made all the loan payments. Guevarra's counsel committed to sending the trustee proof to substantiate these facts, including Guevarra's rent for his residence at a different location.

Daryl's exclusive possession and payments were significant, material facts that Guevarra disclosed early and often to the trustee. These facts patently had the potential to drastically affect the nature of Guevarra's ownership under California law. As we recognized in our disposition of the trustee's bad faith argument, that Guevarra did not pay the purchase price for the Property triggered a presumption that he held his interest in a resulting trust for his nephew. *In re Guevarra*, 2021 WL 1179619, at *2 & n.4.

A resulting trust under California law had the potential to prevent Guevarra's joint ownership from becoming property of the bankruptcy estate. *Id.* If Guevarra's joint interest in the Property was equitably held in trust for his nephew, he would be left with bare legal title. And bare legal title is effectively without value because the substantive equitable interest does not become property of the bankruptcy estate. § 541(d); *see also Mitsui Mfrs. Bank v. Unicom Comput. Corp. (In re Unicom Comput. Corp.)*, 13 F.3d 321 (9th Cir. 1994) ("[S]omething held in trust by a debtor for another is neither property of the bankruptcy estate under section 541(d), nor property of the debtor for purposes of section 547(b)."); *Savin v. Kafka (In re Kafka)*, Case No. 17-30013 HLB, 2018 WL 6132506, at *12 (Bankr. N.D. Cal. Nov. 21, 2018) (determining that debtor held bare legal title to the property and held interest in a resulting trust for the beneficial owners of the property); *Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.)*, 172 B.R. 638, 641-42 (9th Cir. BAP 1994) ("The resulting trust having been determined by law

21

to exist, the trustee has no equitable rights in the trust, and the res is not property of the estate pursuant to § 541.").

The record does not reveal whether the trustee ever received the documentation promised by Guevarra's counsel. But the trustee's motion to sell demonstrates that the trustee fully understood the significance of Guevarra's argument. The trustee sought to sell Guevarra's joint interest in the Property based on the Grant Deed. Despite the clear existence of that interest, the trustee included considerable discussion about his strong-arm powers as trustee. The obvious purpose of this discussion was to show that the trustee's status as a bona fide purchaser for value under § 544(a)(3) could defeat any equitable interest Guevarra's nephew might have in his uncle's share of the Property. Given that the Grant Deed established their joint legal title, there was no reason for the trustee to include that discussion except to rebut Guevarra's argument that a resulting trust arose from his nephew's payments and possession of the Property. Indeed, the time records for the trustee's counsel show that he spent several hours researching constructive and resulting trusts before filing the motion to sell.

We acknowledge that prior to his response to the trustee's exemption claim objection, Guevarra's terse arguments to the court never specifically and distinctly articulated his resulting trust theory. Instead, Guevarra only told the court he was a mere co-signer on the loan and that he made no payments for and did not live on the Property. But regardless of what the

court understood at the time, there is no doubt as to what the trustee knew and understood at the time. In fact, at the sale motion hearing, the trustee did not dispute any of Guevarra's alleged facts regarding possession of and payments for the Property. Rather, he invoked his strong-arm powers under § 544(a)(3) and argued that his status as a bona fide purchaser for value could defeat any prior equitable interest. The trustee also argued that the trustee's actual knowledge of the facts was irrelevant. But as we recognized in our prior decision, under California law "if a bankruptcy trustee has constructive notice of the resulting trust, it cannot be avoided under the trustee's strong-arm powers." *In re Guevarra*, 2021 WL 1179619 at 2 n.4 (citing *In re Sale Guaranty Corp.*, 220 B.R. at 665-66).

In short, there was no need for the trustee to invoke his strong-arm powers except as a means to respond to Guevarra's resulting trust argument. By that time, the trustee's discussions with Guevarra's counsel had made it clear to the trustee that Guevarra was asserting a resulting trust that limited his interest in the Property to bare legal title. The trustee's strong-arm powers may well have ultimately defeated Guevarra's resulting trust argument given the facts and circumstances of this case. *See generally McGranahan v. Dillard (In re Dillard)*, Case No. 06-20596-A-7, 2007 WL 3237165 at *4 (Bankr. E.D. Cal. Oct. 30, 2007). But the ultimate outcome is not the issue. Whether or not successful, Guevarra's resulting trust argument, and the trustee's recognition of that argument, establishes that Guevarra did not merely deny his interest in the Property.

At bottom, no finder of fact reasonably could have found that Guevarra misled the trustee as to his ownership in the Property on the record before us. While Guevarra stated that he had no ownership interest of value, he explained the facts that created a presumption of a resulting trust under controlling law that supported his position. There was no misrepresentation of a material fact—only a dispute about the legal implications of those facts. Consequently, the bankruptcy court's finding that Guevarra knowingly misstated his ownership was clearly erroneous.

**2. Guevarra's "concealment" of a present intent to exempt his interest in the Property.**

Though Guevarra's putative misrepresentation of his ownership of the Property predominated the trustee's objection to the amended exemption, the court found that Guevarra induced the trustee to sell his interest in the Property by concealing an intent to exempt that interest. The court cited Guevarra's repeated denials of his interest in the Property as evidence of this concealment. But as explained above, Guevarra disclosed his ownership interest and argued that it was not property of the estate, or was worthless, because he held bare legal title. Because he believed that he held bare legal title, his interest was valueless without the equitable interest which was not property of the estate. Accordingly, there was no practical reason for Guevarra to exempt bare legal title. Guevarra's resulting trust argument was consistent with his original decision not to exempt his interest in the Property.

In *Lua*, the Ninth Circuit rejected an argument similar to the trustee's present concealment argument. There, the debtor challenged her interest in real property for years based on her belief that she did not hold any community interest in her residence. The chapter 7 trustee in *Lua* had argued that her failure to take a homestead exemption was proof that she concealed her intent to exempt her residence. The Ninth Circuit held to the contrary that Lua's original schedules "cannot form the basis of an estoppel because they set forth all of the existing facts known to [the debtor]." *In re Lua*, 692 F. App'x at 852. Given a debtor's right to amend her schedules, including her exemptions, "nothing in Lua's First Amended Schedules can be deemed a representation by Lua that she would not amend her exemptions again if circumstances changed." *Id.* at 853.

The bankruptcy court attempted to distinguish *Lua.* It cited *Aubry* in support of its conclusion that Guevarra concealed his exemption "by omitting the exemption from the initial Schedules and thereafter testifying at the § 341 meeting that the initial Schedules were accurate." It also cited *Gonzalez* for the proposition that Guevarra had mislead the trustee by originally using the wild card to exempt "a Wells Fargo 401(k) bank account." Finally, it reasoned that like the trustee in *Aubry*, the trustee in Guevarra was harmed because he incurred considerable expense to sell the Property based on the debtor's choice not to exempt a valuable asset.

Though *Lua* is an unpublished decision, we find it persuasive and adopt its reasoning. The absence of an exemption for his interest in the

Property in Guevarra's original schedules did not constitute a representation that he would not amend his exemption in the future. *In re Lua*, 692 F. App'x at 852-53; *see also In re Gilman*, 608 B.R. 714, 729 (Bankr. C.D. Cal. 2019) (following *Lua* and holding that the debtor's failure to disclose a prepetition escrow of a residence for sale in his initial schedules did not equitably estop the debtor from claiming an automatic homestead exemption in the residence), *aff'd*, 2020 WL 7087703 (C.D. Cal. Oct. 28, 2020). Nor are we persuaded that Guevarra's exemption of a 401(k) account under the wild-card exemption was meaningful as demonstrated by his subsequent amended exemption of the 401(k) account under the more applicable CCP § 703.140(b)(10)(E). In *Gonzalez* the debtor had the choice to exempt one of two assets under mutually exclusive exemptions. For whatever reason Guevarra originally decided to exempt his 401(k) account under the wild-card exemption, it did not preclude exemption under the more specific provision of CCP § 703.140(b)(10)(E).

Finally, Guevarra's case materially differs from *Aubry.* The trustee in *Aubry* incurred time and fees to administer an undisclosed annuity. For a year after discovery of the asset, the debtor did not challenge the estate's rights in the asset or exempt it despite filing amended exemptions when the case was reopened. Only after the trustee received an annual payment did the debtor exempt the annuity. Here, as in *Lua,* the debtor challenged the estate's rights in the asset the estate sought to administer. Once Guevarra lost that challenge, his circumstances changed, and he was

26

entitled to amend his exemption based on the court's decision to permit the estate to sell his interest in the Property. *In re Lua*, 692 F. App'x at 853 (holding that circumstances changed "when, at the request of the Trustee, the bankruptcy court entered an order finding that the Property was 100% community property, providing Lua a new factual basis to claim a homestead exemption"). Neither *Aubry* nor *Gonzalez* involved any legitimate change in circumstances that served as an impetus for the amended exemption. Rather, in both situations it was the trustee's administration of the nonexempt asset that prompted the belated exemption when it was available throughout the case. In contrast, the debtor in *Lua* and Guevarra both experienced bona fide changes in circumstances: the court's rejection of their respective legal positions that challenged whether the subject property was property of the estate.[7]

As in *Lua*, Guevarra provided the trustee with all the existing facts concerning his ownership. The parties merely disputed the legal significance of those facts. The trustee is not misled, and there is no concealment, where the parties disagree as to the legal significance of known facts. Nor can the trustee penalize a debtor for litigating his position, even when the debtor amends his or her exemptions if the debtor loses. Here, the court effectively disposed of Guevarra's resulting trust

---

[7] We express no opinion whether omitting an asset completely from the debtor's schedules ever could be, by itself, sufficient grounds for equitable estoppel under California law.

argument when it approved the sale of his interest in the Property. As a result of the court's decision, Guevarra's circumstances changed, and that change in circumstances provided him with a basis to claim an exemption he previously did not believe he had. Guevarra's situation was no different than the debtor in *Lua.* The record simply does not support any inference that Guevarra held a present intent to exempt a property interest that he believed was limited to bare legal title when he filed his original schedules and exemptions.

3.      **Given the absence of a misrepresentation or concealment, the other equitable estoppel elements also are absent.**

There being no misrepresentation of Guevarra's ownership, or concealment of a pre-existing intent to exempt his interest in the Property, the rest of the elements needed to establish equitable estoppel also fail. The trustee was required to prove that he was actually and permissibly ignorant of the truth. But "where the person pleading estoppel had knowledge of the facts, there is no reliance." *In re Lua*, 692 F. App'x at 852 (quoting *Sidebotham v. Robison*, 216 F.2d 816, 829 (9th Cir. 1954)). The trustee knew of Guevarra's interest under the Grant Deed as well as his resulting trust argument. And as a trustee he knew, or should have known, there was no need for Guevarra to exempt an interest that was limited to bare legal title because the estate did not have any beneficial interest in such property. *See* § 541(d) (providing that when debtor holds only legal title to property, no equitable interest in that property passes to the bankruptcy

28

estate); *see also In re Markair, Inc.*, 172 B.R. at 641-42 (stating that trust res did not constitute estate property when the debtor had no equitable interest in the res to pass on to the trustee and the estate).

Similarly, the trustee is charged with knowing that if the court rejected Guevarra's resulting trust argument, Guevarra could amend his exemption in light of that ruling. *In re Gilman*, 608 B.R. at 729 ("[A] debtor's schedules cannot form the basis of an equitable estoppel claim because the parties are aware that the debtor may amend her schedules at any time."). That is exactly what happened here. As such, the trustee failed to establish that he was permissibly ignorant of either Guevarra's ownership or his ability to exempt that interest if the court rejected his resulting trust argument.

The record additionally provides no support for the court's findings that Guevarra induced the trustee to sell his interest while concealing an intent to exempt that interest. Based on the resulting trust argument, there was no need for Guevarra to exempt his interest if it was limited to bare legal title. That was the entire point of Guevarra's resulting trust argument: to prevent the trustee from selling his interest.

The bankruptcy court held that Guevarra intended to induce the trustee to sell his interest in the Property because he failed "to properly exempt his interest in the Property." In this instance, this amounts to nothing more than penalizing the debtor for raising an unsuccessful legal argument. The trustee was fully aware of Guevarra's argument, which was

29

entirely consistent with his not exempting an interest that he argued was limited to bare legal title.

## CONCLUSION

There is an obvious tension between the debtor's right to amend his exemptions and application of equitable estoppel. As we noted in our prior decision, we have interpreted *Law v. Siegel*, 571 U.S. 415 (2014), "as overruling the bankruptcy court's authority to deny an exemption on grounds of bad faith." *In re Guevarra*, 2021 WL 1179619, at *4. Equitable estoppel is not a substitute for bad faith. Courts must be careful not to penalize debtors for exercising the statutory right to amend their exemptions or to read too much into a debtor's failure to exempt an asset. Without more, such an omission does not constitute a misrepresentation or concealment for purposes of equitable estoppel. Similarly, standing alone, the failure to exempt an asset does not impermissibly induce a trustee to administer an asset as he or she knows that debtors may amend their exemptions as a matter of right. Admittedly, this can place chapter 7 trustees in a tenuous position when faced with a valuable asset that the debtor has not exempted but could. Even so, we are not free to ignore the necessary implications of *Law v. Siegel* simply because they present a practical problem for chapter 7 trustees in administering estate assets.

As explained above, the record does not support the bankruptcy court's findings that Guevarra knowingly concealed his interest in the Property while the trustee was ignorant of that interest, or of Guevarra's

right to amend his exemptions. Accordingly, we REVERSE the bankruptcy court's order sustaining the trustee's exemption claim objection based on the application of equitable estoppel.